**IN THE COURT OF APPEALS OF IOWA**

No. 13-1781
Filed May 6, 2015

**IN RE THE MARRIAGE OF CAROL ANN FREDERICKSEN AND THOMAS MICHAEL FREDERICKSEN**

**Upon the Petition of**
**CAROL ANN FREDERICKSEN,**
        Petitioner-Appellee,

**And Concerning**
**THOMAS MICHAEL FREDERICKSEN,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary (dissolution decree), Steven J. Andreasen (denying motion to set aside default decree) and James D. Scott (other motions and dismissing petition to vacate decree), Judges.

        Thomas Fredericksen appeals from several rulings following the entry of a default dissolution decree. **AFFIRMED ON BOTH APPEALS.**

        Alice S. Horneber of Horneber Law Firm, P.C., Sioux City, for appellant.

        Elizabeth A. Row, Sioux City, for appellee.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ. Scott, S.J., takes no part.

**POTTERFIELD, J.**

In these consolidated appeals, Thomas Fredericksen appeals from several rulings following the entry of a default dissolution decree. Finding no error of law or abuse of discretion, we affirm on both appeals.

**I. First Appeal.**

**A. Background facts and proceedings.** On July 31, 2012, Carol Ann Fredericksen filed a petition for dissolution of her marriage to Thomas Michael Fredericksen. The petition and original notice were personally served on Thomas on August 9 and the return of service was filed on August 14, 2012.

Notice of intent to file a written application for default judgment was filed on September 4, a copy of which was sent that same date by ordinary mail to the marital residence, Thomas's last known address.

On September 18, Carol filed an application for entry of default judgment and notice was again sent to Thomas.

On October 1, the clerk of court entered default judgment. Thomas had filed no answer or responsive pleading to the petition. No attorney had entered an appearance for Thomas.

*Dissolution Decree.* On March 22, 2013, the district court entered a decree dissolving the parties' marriage and dividing the marital property. The court awarded the marital residence to Carol, ordering Thomas to vacate the premises. The court ordered the assets and real estate of the parties' corporation (TFC Builders & Services, Inc.) sold and the net proceeds equally divided. Thomas was awarded the business, MAGS Aviation, L.L.C., and its assets. Other personal property was divided in accordance with a seven-page

exhibit to the decree, which listed corresponding market values. Carol and Thomas were ordered to pay any indebtedness in their own names. The decree also provided:

> All individual state and federal tax refunds received by the parties for tax years 2009, 2010, 2011, and 2012 shall be divided evenly between the parties. All taxes and penalties owed for the tax years 2009, 2010, 2011, and 2012 shall be divided evenly between the parties and paid within 12 months, unless other arrangements are made with the Internal Revenue Service or the State of Iowa. Each party shall be responsible for filing state and federal income tax returns for his or her 2013 income, and each party shall pay any taxes or penalties associated therewith.

A copy of the decree was mailed by the clerk of court to Thomas at the marital address.[1]

*Motion to Set Aside.* On March 27, 2013, Thomas filed a motion to set aside the decree, which Carol resisted. A hearing was held on April 22, 2013, at which Thomas, Carol, Keith Robley (Thomas's mail carrier), and Cindy Scherer (Carol's attorney's secretary) testified. In addition, counsel for both Thomas and Carol offered professional statements.

On September 13, 2013, the district court concluded Thomas had not proved good cause to set aside the default under Iowa Rule of Civil Procedure 1.977.[2] The court found Thomas's claims that he had not received notice of

---

[1] Iowa Rule of Civil Procedure 1.453 provides:
> A judge may enter judgments, orders or decrees at any time after the matter has been submitted, effective when filed with the clerk, or as provided by rule 1.442(5). The clerk shall promptly mail or deliver notice of such entry, or copy thereof, to each party appearing, or to one of the party's attorneys. The clerk is authorized to deliver any judgments, orders, decrees or notices to the e-mail address provided by the attorney or party.

The record also includes an affidavit of mailing by Carol.

[2] Rule 1.977 provides:

intent to file for default was not credible. Moreover, the court rejected Thomas's claims of mistake, inadvertence, and surprise.

*Motion to Modify and Petition to Vacate.* On September 26, 2013, Thomas, now represented by new counsel, filed an Iowa Rule of Civil Procedure 1.904(2) motion to modify the ruling on the denial of his motion to set aside. Thomas also filed a petition to vacate judgment pursuant to rule 1.1012,[3] asserting that entry of the decree "without filing mandatory documents and without having a mandatory hearing constitutes irregularity."

On September 30, 2013, (fourteen months after the petition for dissolution was filed and six months after the dissolution decree was entered) Thomas filed an answer to the petition for dissolution and a financial affidavit.

*Carol's Motion to Strike and Motion for Summary Judgment, and other filings.* Carol filed a resistance to the rule 1.904(2) motion to modify, arguing the issues were res judicata. She also filed a motion to strike Thomas's answer and affidavit of financial status as not responsive to any pending matter. In addition, Carol also filed an answer to the petition to vacate. Finally, Carol filed a motion for summary judgment, asserting the petition to vacate was res judicata.

*Denial of Motion to Modify Order.* On October 22, 2013, Thomas's motion to modify the order denying the motion to set aside default judgment was

---

> On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than 60 days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation.

[3] Iowa Rule of Civil Procedure 1.1012 allows a court to vacate or modify a final judgment or order, or grant a new trial "[u]pon timely petition and notice under rule 1.1013" on the grounds of "[i]rregularity or fraud practiced in obtaining it."

rejected. The court refused to consider additional factual allegations contained in Thomas's motion to modify, noting the hearing "was limited to the issues of 'mistake, inadvertence, surprise, excusable neglect, or unavoidable casualty' under Rule 1.977." The order provided further,

> The Court also denies the Motion in regard to the claim that [Carol] did not file an Affidavit of Financial Status or present evidence prior to the entry of the Default Decree. First, said claim was not raised at the time of the hearing on the Motion to Set Aside Default. Second, [Thomas's] claim of "irregularity" and "fraud" are not bases for setting aside a default under Rule 1.977.
>
> Finally, the Court denies [Thomas's] request to modify its prior Findings that [Thomas] never formally retained representation until after the Decree was filed. Although the evidence clearly established that [Thomas] contacted and spoke with Attorney Kayl in August and September 2012, [Thomas] and Attorney Kayl had not finalized an agreement concerning payment, specifically payment of a retainer fee. [Thomas] therefore had not formally retained representation until after the Decree was filed. Again, the Court makes no determination as to factual allegations made by [Thomas] in regard to his communications with Attorney Kayl that were not presented at the time of the hearing on the Motion to Set Aside Default.

The court further noted the issues raised by Thomas's petition to vacate were "different than the issues addressed by the court in its ruling on the motion to set aside a default under rule 1.977" and were to be tried as a different matter.

*Order Granting Motion to Strike.* On October 25, the court granted the motion to strike the answer and affidavit: "There is no pending dissolution of marriage action, therefore, for which an Answer and Affidavit can be filed. To the extent Respondent's pending petition to vacate that decree is successful, Respondent will then have an opportunity to Answer the dissolution petition."

*First Notice of Appeal.* On November 7, Thomas filed a notice of appeal concerning the district court's September 13 (denial of motion to set aside),

October 22 (denial of motion to modify the September 13 ruling), and October 25, 2013 (order striking answer and affidavit).  We will address these issues first in order to avoid further confusion arising from this procedural morass.[4]

**B. Standard of review.**   Thomas contends our review is de novo,[5] however, a proceeding to set aside a default judgment is at law.  *Cent. Nat'l Ins. Co. v. Ins. Co. of N. Am.*, 513 N.W.2d 750, 753 (Iowa 1994).  Thus, we review for errors of law.  *Id.*

> We vest district courts with broad discretion in ruling on a motion to set aside a default.  We reverse such a ruling only if this discretion is abused.  Generally, we find such an abuse only when there is a lack of substantial evidence to support the district court's ruling.  *Paige v. City of Chariton*, 252 N.W.2d 433, 437 (Iowa 1977).  We are bound by the district court's findings of fact if supported by substantial evidence, and we view the evidence in the light most favorable to the district court's ruling.

*Id.*; *see also Wilson v. Liberty Mut. Grp.*, 666 N.W.2d 163, 165 (Iowa 2003) ("Reversal on appeal is warranted only when the court's discretion has been abused.").

Our review of the district court's grant of a motion to strike is for abuse of discretion.  *Theis v. James*, 184 N.W.2d 708, 710 (Iowa 1971).  "The district court abuses its discretion when it exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable."  *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014).  "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous

---

[4] Our supreme court consolidated Thomas's two appeals and transferred the matters to this court.

[5] We generally engage in a de novo review of an equitable action, giving weight to the district court's factual determinations without being bound by its determinations.  Iowa R. App. P. 6.907.

application of the law." *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000).

**C. Denial of motion to set aside default.** Thomas first contends the district court erred in failing to grant his motion to set aside the default judgment.

Iowa Rule of Civil Procedure 1.977 provides "[o]n motion and for good cause . . . the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty." The burden is on the movant to plead and prove good cause. *Cent. Nat'l Ins.*, 513 N.W.2d at 754. Good cause is a "sound, effective, and *truthful reason.* It is something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect." *Id.* (emphasis added). The reason for default must rise to one of the grounds enumerated in the rule, that is, mistake, inadvertence, surprise, excusable neglect, or unavoidable casualty. *Id.* Additionally, good cause requires at least a claimed defense asserted in good faith. *Id.*

The underlying purpose of rule 1.977 is "to allow a determination of controversies on their merits rather than on the basis of nonprejudicial inadvertence or mistake." *Brandenburg v. Feterl Mfg. Co.*, 603 N.W.2d 580, 584 (Iowa 1999). However, "this objective must be qualified and cannot be extended to the point where a default judgment will be vacated when the [movant] has ignored [the rules of procedure] with ample opportunity to abide by them." *Haynes v. Ruhoff*, 157 N.W.2d 914, 916 (Iowa 1968). "[W]e have never upheld such a grant where the movant fails to show any effort to appear in response to a due and timely notice." *Id.*

There is no dispute that Thomas was personally served with original notice and a copy of the petition for dissolution on August 9, 2012. Nor is there any dispute that he did not answer within the applicable timeframe. *See* Iowa R. Civ. P. 1.303. He was thus in default. *See* Iowa R. Civ. P. 1.971 ("A party shall be in default whenever that party does any of the following . . . (1) Fails to serve and, within a reasonable time thereafter, file a motion or answer as required in rule 1.303 or 1.304.").

In the district court, Thomas claimed he did not receive the notice of intent to file default or the application for entry of default, or the clerk's default. After the hearing on the motion to set aside default judgment, the district court found Thomas was not a credible witness. We give great deference to the district court's credibility determinations. *Etchen v. Holiday Rambler Corp.*, 574 N.W.2d 355, 360 (Iowa Ct. App. 1997) ("The district court has a better opportunity than the appellate court to evaluate the credibility of witnesses.").

The district court found that Carol sent and Thomas received the written notice of intent to file an application for default, which was filed on September 4, 2012, and mailed to Thomas at his last known address.[6] The district court also found that Carol sent and Thomas received the application for entry of default judgment, which was filed on September 18, 2012.[7] The clerk was thus required

---

[6] *See* Iowa R. Civ. P. 1.972(3) ("A copy of the notice of intent to file written application for default shall be sent by ordinary mail to the last known address of the party claimed to be in default. No other notice to a party claimed to be in default is required.").

[7] *See* Iowa R. Civ. P. 1.972(2) ("Requests for entry of default under rule 1.972(1) shall be by written application to the clerk of the court in which the matter is pending. No default shall be entered unless the application contains a certification that written notice of intention to file the written application for default was given after the default occurred and at least ten days prior to the filing of the written application for default. A copy of the notice shall be attached to the written application for default. If the certification is filed,

to enter default on the record, which the clerk did on October 1, 2012. *See* Iowa R. Civ. P. 1.972(2) ("If the certification is filed, the clerk on request of the adverse party must enter the default of record without any order of court."). The dissolution decree was not filed until March 23, 2013.

On appeal, Thomas no longer challenges notice rather he contends the district court erred in denying his motion to set aside the default judgment generally complaining that his first attorney did not take the necessary steps to avoid default. But the district court specifically found Thomas did not formally retain counsel until after the decree was filed, more than seven months after the default was entered. This finding is supported by substantial evidence in the record. Thomas testified he met with Attorney Angela Kayl in August 2012 but did not pay her a retainer fee at that time. He testified the next time he met with Kayl was "a few weeks ago"—which was after the divorce decree was filed on March 22, 2013. Having failed to retain counsel, he cannot complain counsel did not act on his behalf.[8]

We set out and adopt the district court's thorough fact findings here:[9]

> Thomas may not have read the Notice of Intent or Application or he may have disregarded them, however, the Court believes such documents were delivered to his Evergreen Lane residence.
>    The Court further finds Carol's testimony concerning their conversations in January and February 2013 to be credible. . . .

---

the clerk on request of the adverse party must enter the default of record without any order of court.").

[8] We note, too, that Thomas was not unfamiliar with court proceedings having been involved in small claims, bankruptcy, civil, and criminal matters.

[9] On appeal, Thomas disagrees with the court's finding of fact that he had not retained Kayl, but the finding is supported by his own testimony and is thus binding on us. *See Cent. Nat'l Ins.*, 513 N.W.2d at 753 ("We are bound by the district court's findings of fact if supported by substantial evidence, and we view the evidence in the light most favorable to the district court's ruling."). Thomas also then interjects complaints about the denial of his motion to vacate, which is a separate issue we address later.

. . . .

Considering the above findings, Thomas was personally served with the original notice and copy of the Petition on August 9, 2012. He received a Notice of Intent sometime after September 4 and a copy of the Application for Entry of Default sometime after September 18, 2012. He contacted at least one if not two attorneys regarding this dissolution matter and he never formally retained representation until after the Decree was filed. He, therefore, knew that no Answer to the Petition was filed and had no mistaken belief that an Answer would be filed on his behalf; and he filed no Answer on his own behalf. He thereafter made no attempt to check the status of this dissolution proceeding until after he received a copy of the Decree. Finally, although the Entry of Default was filed October 1, 2012, the Decree was not filed until March 22, 2013. Thomas, therefore, had more than seven months after service of the original notice to file an Answer or Appearance, which would have at least required additional notice to him before the Decree could be entered under Rule 1.973. Thomas chose not to or otherwise failed to do so.

Considering the factors noted above, the Court finds under these circumstances that Thomas's default was not simply the result of a mistake. Although Thomas promptly filed his Motion to Set Aside after the Decree was entered, the Court also questions whether he intended to defend, considering the delay and his failure to act after the default was entered in October 2012. Again, the Court believes Thomas received his copies of the Notice of Intent and Application for Entry of Default mailed in September, 2012. Even if copies of those documents were not actually received by Thomas; however, the Court would still question whether Thomas willfully ignored the rules (as opposed to a simple mistake) and whether he truly intended to defend based upon the seven-month delay from service of the original notice. There also was nothing said or done by Carol or anyone other than Thomas between the filing of the Petition and filing of the Decree that would have reasonably caused Thomas to be "surprised" to a degree that should relieve him of his default. Thomas's failure to file an Answer was due to his own negligence, want of ordinary care, carelessness or inattention.

The Court also considers whether Thomas has asserted a claim or defense in good faith. In this regard, a dissolution of marriage action is not really "defended." Thomas argues in general that the property division provisions of the Decree are not equitable. In this regard, Thomas is not required to present evidence at the hearing on his Motion to Set Aside Default akin to a full-blown dissolution trial to establish such a good faith claim or defense regarding the equities of the property division. He still must assert something more than just a general request to set aside the default

and proceed to trial. In this regard, Thomas testified that he never would have agreed to the filing of tax returns and splitting the costs/obligations/refunds before the Decree was entered if he knew Carol was proceeding with the divorce. The filing of tax returns, however, is an issue that is in many ways separate from the within dissolution. Even if each party filed separate returns or even if Carol filed returns for the businesses without Thomas's input, or even if the parties had not filed returns before the Decree, any cost associated with preparation of tax returns and any tax obligations or refunds, regardless of who received or paid, could have been disputed at trial in the within matter. Any such tax obligation or refund would have been subject to division at trial. Thomas argues that he would not have "agreed" to an even division of such refunds or obligations as set forth in the Decree. He claims he would not have agreed to be obligated for "additional" taxes or deficiencies in relation to TFC Builders and Services, Inc. as set forth in the Decree (this Court would interpret the Decree to be in reference to any obligation determined to exist above and beyond any obligation paid by the parties when the returns were filed). Thomas submitted no evidence or argument, however, as to why the treatment of those taxes in the Decree is inequitable. In contrast, Carol testified that the parties were three years behind in their taxes and had always split the taxes during the marriage.

Thomas also claims some of the items of property, such as a Bobcat, referenced in the Decree were either sold or are owned by family members. Again, however, he offered little or no evidence or even argument as to how exclusion of such items would change the equitable nature of the Decree. The bobcat, for example, is listed in the Decree as an asset of TFC Builders to be sold with the parties equally dividing the proceeds. If the bobcat no longer exists, each part[y's] receipt of marital property would be diminished equally. The fact or argument that the bobcat was sold, therefore, is not a good faith claim or defense that would be asserted by Thomas if the Decree were set aside.

Thomas also argued that the assets of TFC Builders were still needed for work scheduled to be performed in the summer of 2013. . . . The Decree provides for TFC to be sold at auction or as otherwise agreed by the parties. The parties, therefore, could and can agree for Thomas to "buy out" Carol's one-half interest in the business . . . . The argument that Thomas was wanting to use some of the assets in the summer of 2013, therefore, is not a good faith claim or defense that Thomas could make if the Decree were set aside, because the practical effect of the Decree would be the same even if the Court agreed with him.

Finally, Thomas testified at the hearing that he did not want the divorce. To the extent that is part of his claimed "defense," the Court would note that Iowa is a "no fault" divorce state. Thomas

could have requested conciliation when he filed an answer but did not do so. His resistance or objection to the divorce otherwise would not be considered a valid "defense" considering Carol's certification of the breakdown of the marriage.

. . . .

The Court recognizes the preference to have legal actions decided on their merits. Giving consideration to the factors applicable to a Motion to Set Aside and the factual record presented, however, the Court finds and concludes that Thomas has failed to show good cause for setting aside the default or the Decree filed herein for mistake, inadvertence, surprise, or excusable neglect under Rule 1.977.

Finding no abuse of discretion, we affirm the denial of the motion to set aside default judgment.

**D. Other rulings.** Thomas summarily contends the court erred in rejecting his motion to modify and in striking his answer and affidavit. However, he offers neither argument nor authority and these claims are thus waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

**II. Second Appeal.**

**A. Additional background.** After the first appeal was filed, numerous additional documents were filed in the district court, including a resistance to Carol's motion for summary judgment, Thomas's petition to vacate, Thomas's motion for summary judgment on his petition to vacate, two orders denying the respective motions for summary judgment, and a second March 6, 2014 motion for summary judgment filed by Carol.

In denying Thomas's motion for summary judgment, on January 7, 2014, the district court wrote:

Respondent contends the Court should vacate the decree because irregularity or fraud was practiced in obtaining the decree.

Specifically, Petitioner did not file an affidavit of financial status and did not cause a hearing to be held prior to entry of the decree. Petitioner resists.

> . . . .

> Respondent petitions to vacate the dissolution decree under [rule] 1.1012 which grants the Court authority to vacate or modify a final judgment if irregularity or fraud was practiced in obtaining it. Irregularity has been defined as "the doing or not doing that, in the conduct of a suit at law, which, conformably with the practice of the court, ought or ought not to be done. Violation or non-observance of established rules and practices. The want of adherence to some prescribed rule or mode of proceeding; consisting either in omitting to do something that is necessary for the due and orderly conduct of a suit, or doing it in an unseasonable time or improper manner." [*Cutler*, 588 N.W.2d at 428-29 (citations and internal quotation marks omitted)].

> There are three guiding principles that assist a court in determining whether an irregularity has occurred. *Id.* at 429. They include (1) a party suffers an adverse ruling due to action or inaction by the court or court personnel; (2) the action or inaction must be contrary to some prescribed rule, mode of procedure, or core practice involved in the conduct of the lawsuit; and (3) the party alleging the irregularity must not have caused, or had prior knowledge of the breach of the rule, mode of procedure or practice of the court.

> Although Carol did not file an affidavit of financial status and the Court did not hold a hearing prior to entry of the default decree of dissolution, Thomas has not shown this to be an irregularity or fraud as a matter of law. First, he has not established that he was subject to an adverse ruling. Although Thomas did not receive the distribution he now wants, the Court, following a trial on his motion to set aside, has found "nothing to suggest anything other than they (Carol and Thomas) both contributed to the marriage" and "although the division set forth in the decree may not be exactly equal, it appears to provide a relatively equal division of the assets and debts. The decree, for example, does not appear to award all or most of the assets to Carol or allocate all or most of the debts to Thomas." Thus, Thomas has not established as a matter of law that he has suffered an adverse ruling due to action or inaction by the Court or court personnel.

> Thomas also fails to satisfy the second criteria, violation of a prescribed rule. Although Iowa Code § 589.13(1) requires a party to file a statement of net worth by affidavit, the requirement can be waived. *See* [Iowa Code] § 598.13 [(2011)]. The Court had the authority to enter a decree by default without a hearing. *See* Iowa Code §598.8(2).

The court thereafter denied Thomas's motion to modify its January 7 ruling.

On May 16, 2014, an unreported telephonic hearing was held, after which the district court entered a "ruling on pending motions," in which it concluded:

> Judge Andreasen held an evidentiary trial on [Thomas's] motion to set aside default and issued detailed Findings and Conclusions. [Thomas] now seeks another evidentiary hearing on the same fundamental claim that the default dissolution decree should be nullified. Respondent's claim that the lack of a hearing and financial affidavit constituted an irregularity was known at the time of the first hearing. This is not newly discovered and would involve a second trial of matters that could have been determined at the first trial. It is a waste of judicial resources. It could require a second appeal.
> The earlier denial of Petitioner's motion for summary judgment was in error and should be corrected. Respondent's petition to vacate is barred by claim preclusion.

The court granted Carol's motion for summary judgment and dismissed Thomas's motion to vacate.

On May 29, 2014, Thomas filed a notice of appeal, stating he was challenging the denial of his motion for summary judgment filed January 7, 2014, the ruling denying his 1.904(2) motion following the denial of his motion for summary judgment filed January 27, and the May 16 ruling on pending motions.

**B. Scope and standard of review.** We review summary judgment rulings for errors of law. *Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 853, 858 (Iowa 2014). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In assessing whether summary judgment is warranted, we view the entire record

in the light most favorable to the nonmoving party." *Veatch v. City of Waverly*, 858 N.W.2d 1, 6 (Iowa 2015).

An action to vacate a judgment under Iowa Rule of Civil Procedure 1.1012 is a law action, and thus, our review is for errors of law. *In re Marriage of Cutler*, 588 N.W.2d 425, 430–31 (Iowa 1999). The district court's findings are binding on us if supported by substantial evidence. *Id.* The district court has considerable discretion in deciding whether to grant a petition to vacate a judgment. *In re Marriage of Kinnard*, 512 N.W.2d 821, 823 (Iowa Ct. App. 1993).

**C. Denial of Thomas's motion for summary judgment.**[10] Thomas filed a motion for summary judgment on his petition to vacate, asserting Carol's failure to file an affidavit of financial status or cause the matter to be set down for hearing constituted irregularity as a matter of law requiring the district court to vacate the dissolution decree. The motion was accompanied by "respondent's statement of material facts," which includes the statements "6. Petitioner did not file an Affidavit of Financial Status prior to having the Decree entered. (Ex. 2) 7. Petitioner did not cause a hearing to be held prior to the entry of the Decree. (Ex. 2)." Exhibit 2 appears to be a copy of the electronic docket for the dissolution action (Woodbury CDCD123604).[11] His memorandum of authorities cites rule 1.1012 and Iowa Code sections 598.13(1) and 598.8(2). Thomas contended:

---

[10] In Thomas's second issue on appeal, he asserts "the district court erred in failing to grant [his] motion for summary judgment, in dismissing [his] petition to vacate judgment, and in striking [his] pleadings." We address each of the rulings to the extent we are able to discern Thomas's arguments.

[11] He also attached Exhibit 1, which appears to be the electronic docket from a "domestic abuse" case, Woodbury County number DACV149959; Exhibit 3, a transcript from an October 16, 2013 "hearing on extension of protective order" in DACV149959; Exhibit 4, which is the answer Thomas had filed in this action, but which was stricken; and Exhibit 5, the transcript from the hearing on the motion to set aside.

It is undisputed that Petitioner did not file an Affidavit of Financial Status nor was a hearing held prior entry of the decree. Entry of the Decree without filing mandatory documents and having a mandatory hearing constitutes irregularity and fraud under [Iowa Rule of Civil Procedure] 1.1012. *See In re Marriage of Cutler*, 588 N.W.2d 425, *In re Marriage of Bacon*, 807 N.W.2d 297 (Iowa App. 2011; *In re Marriage of Siddall and Johnson*, 821 N.W 2d 286 (Iowa App. 2012)

. . . .

This Court should grant Respondent's Motion for Summary Judgment and vacate the Decree because there is no dispute that Petitioner failed to file an Affidavit of Financial Status and failed to have a hearing prior to the entry of the Decree, as required.

After the district court denied Thomas's motion for summary judgment, Thomas filed a "motion to modify ruling," objecting to the court's statement that "Thomas has not established as a matter of law that he has suffered an adverse ruling due to action or inaction by the Court or court personnel." He cited to his affidavit of financial status and to his answer. But both of these documents were stricken by the district court on October 25, 2013, and are not properly before us.

We next observe in each of the cases cited by Thomas (*Cutler*, *Bacon*, and *Siddall*), the appellate court upheld the entry of a default dissolution decree. *See Cutler*, 588 N.W.2d at 429-30 (finding no irregularity or fraud justifying petition to vacate); *In re Marriage of Bacon*, No. 11-0368, 2011 WL 4579601, at *5 (Iowa Ct. App. Oct. 5, 2011) ("We find Gregg failed to offer any evidence that would support vacating the default decree on the basis of fraud or irregularity under rule 1.1012(2)."); *In re Marriage of Siddall*, No. 11-1860, 2012 WL 3026414, at *5 (Iowa Ct. App. July 25, 2012) ("Rachena was served with a copy of Matthew's petition that explained the consequences for failing to enter an appearance. Rachena chose to default and lost her right to object on the ground

she failed to receive documents. Accordingly, we affirm the district court's entry of default decree.").

We agree with the district court that Thomas failed to prove as a matter of law that he was entitled to have the decree vacated for irregularity; the court did not err in denying Thomas's motion for summary judgment.

**D. Denial of petition to vacate.** Again, asserting our review is de novo, Thomas contends that this court should "fully consider everything which has transpired since the petition for dissolution of marriage was filed on July 31, 2012." Thomas contends the district court erred in denying his petition to vacate, alleging irregularity or fraud under Iowa Rule of Civil Procedure 1.1012.

Thomas lists a number of factors he believes should go into our consideration, primarily asserting Carol's failure to file an affidavit of financial status or cause a hearing to be held constitutes irregularity under the rule. He cites Iowa Code section 598.13(1), which provides:

> Both parties shall disclose their financial status. A showing of special circumstances shall not be required before the disclosure is ordered. A statement of net worth set forth by affidavit on a form prescribed by the supreme court and furnished without charge by the clerk of the district court shall be filed by each party prior to the dissolution hearing. However, the parties may waive this requirement upon application of both parties and approval by the court.
> Failure to comply with the requirements of this subsection constitutes failure to make discovery as provided in the rule of civil procedure 1.517.

He also cites Iowa Code section 598.8(2), which provides, in part:

> The Court may enter a decree of dissolution without a hearing [if] (b) [t]he respondent has not entered a general or special appearance or filed a motion or pleading in the case, the waiting period provided under section 598.19 has expired, and all of the following circumstances have been met:

>    (1) The petitioner has certified in writing that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.
>    (2) All documents required by the court and by statute have been filed.

He argues that because financial affidavits were not filed, the court could not enter the dissolution decree without a hearing.

"[T]he amount of evidence required to support an application to vacate a final judgment is greater than that necessary to warrant setting aside a default judgment." *In re Marriage of Heneman*, 396 N.W.2d 797, 799 (Iowa Ct. App. 1986). Our supreme court has stated that to qualify as an "irregularity" under rule 1.1012(2) a party must "suffer an adverse ruling because of some action or inaction on the part of the court or some court personnel." *Costello v. McFadden*, 553 N.W.2d 607, 612 (Iowa 1996). In addition, "the action or inaction must be contrary to some prescribed rule, mode of procedure, or court practice involving the conduct of the lawsuit." *Id.* Finally, the party complaining about the action or inaction "must not have caused, been a party to, or had prior knowledge of the breach of the rule, the mode of procedure, or the practice of the court." *Id.*; *see also Cutler*, 588 N.W.2d at 428-29.

The district court, in dismissing the petition to vacate, stated the issues raised (no financial affidavit and no hearing) were not "newly discovered."[12]

---

[12] The district court had previously correctly observed that the issues involved in a rule 1.977 proceeding and a rule 1.1012 proceeding are different. In rejecting Carol's motion for summary judgment on res judicata grounds, the court wrote:

>    A petition to vacate under Rule 1.1012 is a different cause of action than a petition to vacate under Rule 1.977. "The amount of evidence required to support an application to vacate a final judgment is

Nothing in rule 1.1012(2) requires that the grounds asserted in attempting to vacate the decree be "newly discovered." Nonetheless, the district court had previously ruled Thomas failed to prove he was entitled to have the decree vacated because, "[a]lthough Carol did not file an affidavit of financial status and the Court did not hold a hearing prior to entry of the default decree of dissolution," first, Thomas had not suffered an adverse ruling due to action or inaction by the court or court personnel, and second, the statement of net worth by affidavit can be waived.[13]

This is not a case where Thomas had no notice that default was being sought. *Cf. Dolezal v. Bockes*, 602 N.W.2d 348, 352 (Iowa 1999) (setting aside default where movant failed to give prescribed notice).

Nor is it a case where the district court did not have jurisdiction of the parties.[14] "The fact financial affidavits pursuant to section 598.13 were not filed

---

greater than that necessary to warrant setting aside a default judgment. *Heneman*, 396 N.W.2d at 799.

Rule 1.1012(2) provides a court can vacate a judgment for irregularity or fraud. Respondent contends Petitioner's failure to file an affidavit of financial status prior to entry of the decree constitutes an irregularity. Although the Court has ruled on many of the alleged procedural deficiencies already, it has not addressed the issue of failure to file an affidavit of financial status. Respondent's burden is high, even higher than at the hearing to set aside. However, because the issues and proof are different than considered in the judgment denying Respondent's motion to set aside default, res judicata does not bar the present petition to vacate. As the Court stated, it has made no determination as to the merits of Respondent's petition under Rule 1.1012.

[13] These findings are found in the court's order denying Thomas's motion for summary judgment.

[14] While Thomas mentions "fraud" in his pleading, he has not presented any evidence of extrinsic fraud, which is required by rule 1.1012.

Extrinsic fraud is some act or conduct of the prevailing party which prevented a fair submission of the controversy. It includes the lulling of a party into a false sense of security or preventing him from making a defense. Such evidence of fraud must be shown by clear and convincing evidence. A finding of extrinsic fraud as a basis for vacating a judgment

does not raise a jurisdictional question." *In re Marriage of Butterfield*, 500 N.W.2d 95, 98 (Iowa Ct. App. 1993). The filing of financial affidavits may be waived. Iowa Code § 598.13(1).

Rather, as we have already concluded, the district court properly entered default here. Thus, the decree was a final judgment. *See Snyder v. Allamakee Cnty.*, 402 N.W.2d 416, 418 (Iowa 1987) (holding that a default judgment is a final judgment); *accord Dolezal*, 602 N.W.2d at 353.

As noted in *Cutler*, "the party alleging the irregularity must not have caused, or had prior knowledge of the breach of the rule, mode of procedure or practice of the court." 588 N.W.2d at 429. Thomas did not answer or otherwise respond to the dissolution petition after being personally served. And, having also been served with notice of Carol's intent to seek a default judgment and having failed to respond to that notice, we conclude Thomas waived any objection to the shortcomings in Carol's filings. Like the court in *Siddall*, 2012 WL 3026414, at *5, we believe that a party who chooses not to file an answer or

---

would be justified only by the most egregious misconduct; at the very
least would require a showing of fault, willfulness, or bad faith.

*Heneman*, 396 N.W.2d at 800 (citation omitted). Extrinsic fraud is fraud which keeps a party from presenting her case or prevents an adjudication on the merits. *Mauer v. Rohde*, 257 N.W.2d 489, 496 (Iowa 1977). "Examples of extrinsic fraud are a bribed judge, dishonest attorney representing the defrauded client, or a false promise of compromise." *Id.* "In contrast, intrinsic fraud inheres in the judgment itself; it includes, for example, false testimony and fraudulent exhibits. Fraud sufficient to vacate a judgment under rule [1.1012(2)] must be extrinsic to the judgment." *In re Adoption of B.J.H.*, 564 N.W.2d 387, 391-92 (Iowa 1997).

Thomas had asserted at the motion to set aside that Carol's conduct lulled him into believing she was not pursuing the dissolution. The district court, in ruling on the motion to set aside, specifically found that "nothing said or done by Carol or anyone other than Thomas between the filing of the Petition and filing of the Decree that would have reasonably caused Thomas to be 'surprised' to a degree that should relieve him of his default." The court thus implicitly rejected Thomas's contention that Carol's conduct lulled him into a false sense of security.

an appearance waives the right to "object on the ground [he] failed to receive documents." *See In re Marriage of Thompson*, 275 N.W.2d 406, 409 (Iowa 1979) (finding under prior rule where party was not entitled to notice of default that party in default has no right to receive documents filed in an action after default).

Having failed to answer the petition for dissolution or file his own affidavit of financial status,[15] we affirm the district court's dismissal of Thomas's petition to vacate because, among other things, it fails under the third factor enunciated in *Costello*, 553 N.W.2d at 612, that the party complaining about the action or inaction "must not have caused, been a party to, or had prior knowledge of the breach of the rule, the mode of procedure, or the practice of the court."

## III. Appellate Attorney Fees.

Both parties have requested an award of appellate attorney fees. Appellate attorney fees are not awarded as a matter of right, but rest in our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In making this determination, we consider the needs of the requesting party, the opposing party's ability to pay, and the relative merits of the appeal. *Id.* We award no attorney fees.

Costs are taxed to Thomas.

**AFFIRMED ON BOTH APPEALS.**

---

[15] Thomas did file an affidavit of financial status on September 30, 2013, *after* the district court denied his motion to set aside default judgment. The court ordered the affidavit stricken on October 25, 2013. We did not disturb that ruling.